Receipt number AUSFCC-9897547

# UNITED STATES OF AMERICA
# IN THE COURT OF FEDERAL CLAIMS

DOS HERMANOS, INC.,                )
                                   )

     Plaintiff,                  )

                                   )    Case No.  **24-1588 T**

v.                                )

                                   )

UNITED STATES OF AMERICA,          )

                                   )

     Defendant.                  )

_____ /

## COMPLAINT

NOW COMES Dos Hermanos, Inc. (hereinafter "Plaintiff" or "Dos Hermanos") by and through its attorney, Venar Ayar, and files its Complaint against Defendant, United States of America ("Defendant" or "United States"), and alleges as follows:

## THE PARTIES

1.    Plaintiff is a Michigan corporation with residence and principal place of business at 34707 Ford Road, Westland, Michigan 48185.

2.    Defendant is the United States of America, acting through its agency, the Internal Revenue Service ("IRS").

3.    The Plaintiff has not begun any other lawsuits in state or federal court dealing with the same or similar facts as this action.

4.    A statement required under R.C.F.C. 9(m)(2)(B) is attached hereto as **Exhibit A**.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 1491.

## LEGAL BACKGROUND

### Federal Employment Taxes

6.    Plaintiff is claiming a refund of form 941 employment taxes and refundable tax credits related to the Employee Retention Credit.

7.    Employers are required by law to withhold federal income taxes and Federal Insurance Contributions Act ("FICA") taxes from their employees' wages, remit these withholdings, and report them to the IRS on tax form 941.

8.    Employers are also responsible for paying FICA taxes and reporting such taxes to the IRS on tax form 941. 26 U.S.C §§ 3102 and 3111.

9.    Employers are usually obligated to file IRS form 941 on a quarterly basis with the IRS. 26 U.S.C § 6011; 26 C.F.R. § 31.6071 (a) – 1.

### The Employee Retention Credit

10.    In response to the Coronavirus Pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Pub. L. 116-136 (Mar. 27, 2020). Section 2301 of the CARES Act provided a refundable tax credit called the Employee Retention Credit ("ERC") to eligible employers on

qualified wages paid to their employees. Pub. L. 116-136, § 2301. The ERC program was amended and extended under the Consolidated Appropriations Act of 2021, Pub. L. 116-260, § 206 (Dec. 27, 2020), and the American Rescue Plan Act of 2021, Pub. L. 117-2, § 3134 (Mar. 11, 2021), and terminated under the Infrastructure, Investment and Jobs Act, Pub. L. 117-58, § 80604, (Nov. 15, 2021). *See also* 26 U.S.C. § 3134.

11.     A business that is an eligible employer that pays qualified wages after March 12, 2020, and through December 31, 2021, is entitled to claim the Employee Retention Credit against its federal employment taxes on the applicable form 941 tax return for that quarter.

12.     Section 2301(b)(3) of the CARES Act states that if the amount of the credit exceeds the amount of federal employment taxes for any applicable quarter, then the excess is treated as an overpayment and refunded to the employer.

General Qualifying Requirements

(I) Threshold Requirements

13.     An eligible employer is one that is defined as carrying on a trade or business during calendar years 2020 and 2021 and, with respect to any calendar quarter for which the business experienced one of the following:

(a)     Its operations were fully or partially suspended due to orders issued by a governing authority in response to COVID-19 ("Full or Partial Suspension Test") that limited commerce, travel, or group meetings or,

(b)     The business experienced a significant decline in gross receipts ("The Gross Receipts Test") for any calendar quarter of 2020 and/or 2021 compared to the corresponding quarter of 2019. 26 U.S.C. § 3134(c)(2).

## (II) Qualified Wages

14.     If an eligible employer had not more than 100 average full-time employees in 2019, wages that were paid to an employee during quarters in 2020 constituted qualified wages.  Pub. L. 116-136, § 2301(c)(3)

15.     If an eligible employer had not more than 500 average full-time employees in 2019, wages that were paid to an employee during the quarters in 2021 constituted qualified wages. 26 U.S.C. § 3134(c)(3).

## (III) Calculation of Credit

16.     For 2020, the employee retention credit is limited to 50% of qualified wages that an eligible employer pays to an employee in a calendar quarter. Pub. L. 116-136, § 2301(a). The maximum amount of qualified wages that the credit can be claimed against is $10,000 per employee for the entire calendar year of 2020. § 2301(b)(1).

17.     For 2021, the employee retention credit is limited to 70% of qualified wages that an eligible employer pays in a calendar quarter. 26 U.S.C. § 3431(a). The maximum amount of qualified wages that the credit can be claimed against is $10,000 per employee per quarter in 2021. 26 U.S.C. § 3134(b)(1).

## FACTUAL BACKGROUND

18.     Plaintiff operated a restaurant and grocery store located in metropolitan Detroit, Michigan during 2019, 2020, and 2021.

19.     Plaintiff had an average of less than 100 full-time employees during the calendar year 2019.

20.     To the extent the Plaintiff applied and received loan forgiveness under the Paycheck Protection Program, a Shuttered Venue Operators Grant or a grant from the Restaurant Revitalization Fund, the Plaintiff did not include wages included on those applications in its calculation of qualified wages in its claims for the ERC.

21.     Plaintiff did not include the wages of any individuals who directly or indirectly owns more than 50% of Plaintiff or any relatives or spouses of any individuals who directly or indirectly own more than 50% of Plaintiff in its calculations of the ERC.

22.     Plaintiff is not a party to any employee leasing arrangement and did not otherwise lease employees.

23. Plaintiff is not a part of an affiliated service group within the meaning contained in 26 U.S.C. § 414(m).

24. Plaintiff is not a member of a consolidated group of corporations and is not under common control with any other trades or businesses.

25. A major component of plaintiff's business during 2019, 2020 and 2021 was food service at which customers consumed food at the Plaintiff's place of business.

26. On March 16, 2020, Michigan's Governor Whitmer banned on-premises consumption of food or beverages at restaurants through Executive Order 2020-9 due to COVID-19.

27. Michigan's Governor Whitmer extended Executive Order 2020-9 and the ban on on-premises consumption of food or beverage, through Executive Order 2020-20, Executive Order 2020-43, Executive Order 2020-69, and Executive Order 2020-110 to June 8, 2020, due to COVID-19.

28. From June 8, 2020, to November 18, 2020, Michigan's Governor Whitmer limited capacity at restaurants to 50% of normal seating through Executive Order 2020-97, Executive Order 2020-110, Executive Order 2020-115, Executive Order 2020-160, and Executive Order 2020-183 due to COVID-19.

29.    In response to new outbreaks of COVID-19, the Michigan Department of Health and Human Services limited restaurants to outdoor seating only from November 18, 2020, through February 1, 2021, through various Epidemic Orders.

30.    From February 1, 2021, to March 5, 2021, restaurants in Michigan were limited to 25% seating capacity by the Michigan Department of Health and Human Services through various Epidemic Orders due to COVID-19.

31.    From March 5, 2021, to June 21, 2021, restaurants in Michigan were limited to 50% seating capacity by the Michigan Department of Health and Human Services through various Epidemic Orders due to COVID-19.

32.    From March 16, 2020, to June 21, 2021, Plaintiff could not operate its business that sold food for on-premises consumption at full capacity due to Government Orders related to COVID-19.

33.    From March 16, 2020, to June 21, 2021, Plaintiff's trade or business was partially suspended because of Government Orders related to COVID-19.

## COUNT I

Plaintiff Refund Claim on 941-X for Second Quarter 2020

34.    On May 26, 2023, Plaintiff signed an amended IRS Form 941-X for the taxable period ending June 30, 2020, claiming a refund of tax and ERC in the amount of $16,894.44 plus interest. Attached hereto as **Exhibit B**.

35.     The return was mailed to the Internal Revenue Service Cincinnati Service Center on May 26, 2023. Proof of mailing is attached hereto as **Exhibit C**.

36.      The IRS Account Transcripts confirm the receipt on May 30, 2023, and reflects a forwarded for processing date of May 30, 2023. A true and correct copy of the Account Transcript for second quarter 2020 is attached hereto as **Exhibit D**.

37.     More than six months have elapsed since the Plaintiff's claim was filed with the IRS.

38.     There is currently no outstanding balance owed from the Plaintiff for second quarter 2020.

39.     Plaintiff qualified as an eligible employer for this quarter under the Full or Partial Suspension Test.

40.     Plaintiff paid qualifying wages of $33,788.88 second quarter 2020 and calculated an ERC of $16,894.44 for second quarter 2020.

## COUNT II

Plaintiff Refund Claim on 941-X for Third Quarter 2020

41.     On May 26, 2023, Plaintiff signed an amended IRS Form 941-X for the taxable period ending September 30, 2020, claiming a refund of tax and ERC in the amount of $6,689.81 plus interest. Attached hereto as **Exhibit E**.

42.     The return was mailed to the Internal Revenue Service Cincinnati Service Center on May 26, 2023. Proof of mailing is attached hereto as **Exhibit F**.

43.      The IRS Account Transcripts confirm the receipt on May 30, 2023, and reflects a forwarded for processing date of May 30, 2023. A true and correct copy of the Account Transcript for third quarter 2020 is attached hereto as **Exhibit G**.

44.     More than six months have elapsed since the Plaintiff's claim was filed with the IRS.

45.     There is currently no outstanding balance owed from Plaintiff for third quarter 2020.

46.     Plaintiff qualified as an eligible employer for this quarter under the Full or Partial Suspension Test.

47.     Plaintiff paid qualifying wages of $13,379.61 third quarter 2020 and calculated an ERC of $6,689.81 for third quarter 2020.

## COUNT III

Plaintiff Refund Claim on 941-X for Fourth Quarter 2020

48.     On May 26, 2023, Plaintiff signed an amended IRS Form 941-X for the taxable period ending December 31, 2020, claiming a refund of tax and ERC in the amount of $3,519.38 plus interest. Attached hereto as **Exhibit H**.

49.     The return was mailed to the Internal Revenue Service Cincinnati Service Center on May 26, 2023. Proof of mailing is attached hereto as **Exhibit I**.

50.      The IRS Account Transcripts confirm the receipt on May 30, 2023, and reflects a forwarded for processing date of May 30, 2023. A true and correct copy of the Account Transcript for fourth quarter 2020 is attached hereto as **Exhibit J**.

51.     More than six months have elapsed since the Plaintiff's claim was filed with the IRS.

52.     There is currently no outstanding balance owed from Plaintiff for fourth quarter 2020.

53.     Plaintiff qualified as an eligible employer for this quarter under the Full or Partial Suspension Test.

54.     Plaintiff paid qualifying wages of $7,038.76 fourth quarter 2020 and calculated an ERC of $3,519.38 for fourth quarter 2020.

## COUNT IV

Plaintiff Refund Claim on 941-X for First Quarter 2021

55.     On May 26, 2023, Plaintiff signed an amended IRS Form 941-X for the taxable period ending March 31, 2021, claiming a refund of tax and ERC in the amount of $20,303.50 plus interest. Attached hereto as **Exhibit K**.

56.     The return was mailed to the Internal Revenue Service Cincinnati Service Center on May 26, 2023. Proof of mailing is attached hereto as **Exhibit L**.

57.      The IRS Account Transcripts confirm the receipt on May 30, 2023, and reflects a forwarded for processing date of May 30, 2023. A true and correct copy of the Account Transcript for first quarter 2021 is attached hereto as **Exhibit M**.

58.     More than six months have elapsed since the Plaintiff's claim was filed with the IRS.

59.     There is currently no outstanding balance owed from Plaintiff for first quarter 2021.

60.     Plaintiff qualified as an eligible employer for this quarter under the Full or Partial Suspension Test.

61.     Plaintiff paid qualifying wages of $29,005 first quarter 2021 and calculated an ERC of $20,303.50 for first quarter 2021.

## COUNT V

Plaintiff Refund Claim on 941-X for Second Quarter 2021

62.      On May 26, 2023, Plaintiff signed an amended IRS Form 941-X for the taxable period ending June 30, 2021, claiming a refund of tax and ERC in the amount of $27,428.45 plus interest. Attached hereto as **Exhibit N**.

63.    The return was mailed to the Internal Revenue Service Cincinnati Service Center on May 26, 2023. Proof of mailing is attached hereto as **Exhibit O**.

64.    The IRS Account Transcripts confirm the receipt on May 30, 2023, and reflects a forwarded for processing date of May 30, 2023. A true and correct copy of the Account Transcript for second quarter 2021 is attached hereto as **Exhibit P**.

65.    More than six months have elapsed since the Plaintiff's claim was filed with the IRS.

66.    There is currently no outstanding balance owed from Plaintiff for second quarter 2021.

67.    Plaintiff qualified as an eligible employer for this quarter under the Full or Partial Suspension Test.

68.    Plaintiff paid qualifying wages of $39,183.50 second quarter 2021 and calculated an ERC of $27,428.45 for second quarter 2021.

WHEREFORE, Plaintiff prays that this Honorable Court award judgment in favor of Plaintiff and against Defendant in the amount of $74,835.58 plus interest, costs and attorney's fees, and grant any further relief this Court may find appropriate.

Respectfully Submitted,

Dated: October 4, 2024

By: */s/ Venar Ayar*
Venar Ayar
Counsel for Plaintiff
30095 Northwestern Hwy, Ste. 102
Farmington Hills, MI 48334
(248) 262-3400
venar@ayarlaw.com